**UNITED STATES of America, Upon the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellee and Plaintiff-Cross Appellant,**

v.

**T. INDUSTRIES, INC., Defendant-Appellant and Defendant-Cross Appellee.**

Nos. 73–1279, 73–1280.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1973.

Decided Jan. 15, 1974.

As Amended Jan. 24, 1974.

Herbert Glazer, Memphis, Tenn., for defendant-appellant, defendant-cross appellee; John W. McQuiston, II, Memphis, Tenn., on briefs.

Beverly S. Burbage, TVA, Knoxville, Tenn., for plaintiff-appellee, plaintiff-cross appellant; Robert H. Marquis, Gen. Counsel, Beauchamp E. Brogan, Asst. Gen. Counsel, on brief.

Before WEICK and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

This is an appeal by the landowner, T. Industries, Inc. (T. Industries), and a cross-appeal by the Tennessee Valley Authority (TVA), from an award made by the District Court in a condemnation action brought by TVA. On October 11, 1966, in the condemnation proceeding TVA acquired a permanent easement[1] running through a farm in Haywood County, Tennessee, owned by T. Industries and leased to Winter Garden Freezer Company.

The farm owned by T. Industries consisted of 1802 acres, of which 450 acres were cleared for production and the remaining acreage was timber land. The easement taken was 200 feet wide and 10,979 feet long. It consisted of 50.4 acres and ran diagonally through the farm. Of the acreage within the easement 17.5 acres were cleared farm land and 32.9 acres were timber land.

Three Commissioners appointed by the Court conducted a hearing for nine days, taking extensive testimony. The Commissioners found that the farm had a value of $824,788 before the taking, and $728,816.16 after the taking. As a result the Commissioners awarded $95,971.84 to T. Industries.

In making the award the Commissioners valued separately the land within the easement before and after the taking, and damages to the residue. They found that the cleared land in the easement was worth $1,250 per acre before the taking, and $425 per acre after the taking. The seized timber land was valued at $194 per acre before the taking, and $19.40 per acre after the taking. The total difference in value between the land in the easement before and after the taking was $19,744.34. The Commissioners additionally found $76,227.50, damages to the residue.

The District Court reviewed the case de novo.[2] It heard testimony for an additional day and reduced the award from $95,971.84 to $19,000. Of this award $10,000 was compensation for the value of the easement, and $9,000 was awarded for damage to the residue. T. Industries appealed from the reduction of the

---

1. The easement reads as follows:

  EXHIBIT "A" TO DECLARATION OF TAKING AND TRACT PLAT

  A permanent easement and right-of-way for electric power transmission purposes, consisting of the perpetual right to enter and to erect, maintain, repair, rebuild, operate and patrol one line of poles or transmission line structures with sufficient wires and cables for electric power circuits, and all necessary appurtenances, in, on, over, or across said right-of-way, together with the right to clear said right-of-way and keep the same clear of all trees, brush, buildings, sign boards, stored personal property, and fire hazards, to prevent the drilling or sinking of wells within seventy-five feet of the center line of said right-of-way, and to remove any trees located beyond the limits of said right-of-way which in falling would come within ten feet of any transmission line structure or conductor located thereon, the plaintiff to remain liable for any direct physical damage to the land, crops, fences and roads, resulting directly from the operations of the construction and maintenance forces of plaintiff in and about the erection and maintenance thereof, all upon, under, over, and across the following described land: (Description omitted)

2. 16 U.S.C. § 831x states in relevant part:

  Either or both parties may file exceptions to the award of said commissioners within twenty days from the date of the filing of said award in court. Exceptions filed to such award shall be heard before three Federal district judges unless the parties, in writing, in person, or by their attorneys, stipulate that the exceptions may be heard before a lesser number of judges. On such hearing such judges shall pass de novo upon the proceedings had before the commissioners, may view the property, and may take additional evidence. Upon such hearings the said judges shall file their own award, fixing therein the value of the property sought to be condemned, regardless of the award previously made by the said commissioners.

  This statute was later amended, but the parties stipulated that they are bound by it because it was in effect at the time of the taking.

Commissioners' award, and TVA appealed from the Court's award of $9,000-damages to the residue.

This Court is not bound by any factual findings or legal conclusions of the Commissioners or of the District Judge. 16 U.S.C. § 831x.[3]

The major controversy in the case is whether the land taken was comparable to other land in the area used for growing cotton and soybeans, or whether its market value is actually much higher than the surrounding farm land due to the fact that it is a vegetable farm with unique characteristics that make it more valuable than the surrounding farm land. Both sides presented a number of witnesses on this key point.

J. O. Tankersley, President of T. Industries and also President of the Winter Garden Freezer Company, testified that he was involved in vegetable growing all over the United States, and that this was the cheapest land on which he operated. He said that vegetable-growing land in the United States runs in valuation from $1,500 to $5,000 per acre. He valued the T. Industries farm at $1,250 per acre.

Jerry Isaacs, an employee of Doane Agricultural Service, testified that Doane is in the business of managing farms for absentee landowners in forty-eight states and in foreign countries. Isaacs had worked for Doane for several years and had left farm management in 1969 to devote full time to appraisal work. He had received a B.S. degree in agriculture from the University of Missouri in 1962. Isaacs valued the farm at $831,300 before the taking, and $697,000 after the taking. He testified that he had found no other land nearby which was really comparable to the farm in question. He further testified that he had seen no other farm so specialized or fully developed.

Another witness who testified for the landowner was Wayne Parlow, from the adjoining county of Crockett, who had been a county trustee for more than eight years, and was presently serving in his third term in that post; he also spent considerable time in his real estate business. He testified that there was really no property comparable to that of T. Industries in either Crockett or Haywood counties, and that the farm was in a much higher state of cultivation than a farmer would need simply for the growing of cotton or soybeans. He valued the farm as worth $850,000 before the taking and $600,000 after the taking.

For TVA, Charles Ross, a former employee of Doane Agricultural Service, who had managed farms and made appraisals, testified that the farm was no more valuable than a cotton or soybean farm. However, on cross-examination Mr. Ross admitted that he never raised spinach or greens, and that he was not as familiar with growing greens as he was with growing other crops. He found the decline in value of the seized land to be only $4,932.38, and found no damage to the residue.

W. M. Reeder, a former TVA employee (from 1940 to 1968) and now its chief appraiser, testified that there was no "class one soil" on the farm and that the soil on the farm was not particularly suited to growing vegetables. He found the reduced value of the easement taken to be $6,100, and found no damage whatsoever to the residue. On cross-examination, however, he admitted that his most recent experience in appraising vegetable farm land was in 1944 and 1945. He also revealed questionable

3. The relevant portion of statute in effect at the time of the taking, states:

At any time within thirty days from the filing of the decision of the district judges upon the hearing on exceptions to the award made by the commissioners, either party may appeal from such decision of the said judges to the court of appeals, and the said court of appeals shall upon the hearing on said appeal dispose of the same upon the record, without regard to the awards or findings theretofore made by the commissioners or the district judges, and such court of appeals shall thereupon fix the value of the said property sought to be condemned.

knowledge concerning vegetable growing; for example, he stated that wet soils were undesirable for growing spinach and greens. The contrary is true. He said that turnip greens should be planted at the same time in East and West Tennessee. Vegetable farmers do not follow such a practice. Reeder stated that he had no experience in the mechanical harvesting of crops. He further stated that the wet nature of the soil made it less valuable.

Eugene Wetzel, a land appraiser for TVA, testified that the farm of T. Industries was comparable to much of the surrounding cotton land. He found a reduced value of the easement area to be $6,725, and found no damages to the residue. He testified that the fact that the land was planed, bedded and irrigated, did not make it more valuable. However, Mr. Wetzel also said that he had no experience in vegetable growing or farming.

K. L. Page also testified for TVA that the land was comparable to other farm land in Haywood County, but he admitted that he had no real background in the field of commercial vegetable growing.

■ The Commissioners' award clearly revealed that they credited the contention that the land in question had a value higher than the surrounding cotton and soybean land. We think this conclusion is amply supported by the weight of the evidence. There is no dispute that the land is planed, bedded, and irrigated; this makes its market value higher than that of surrounding land which is not nearly so highly developed. In addition, the witnesses who testified for TVA had, at best, a limited knowledge of commercial vegetable farming.

TVA contends that the landowner is not prevented from growing and harvesting vegetables underneath the transmission lines. The landowner contends that it is necessary to plant a cover crop under the lines to prevent weed growth, but that it cannot harvest and irrigate mechanically on the easement area because of the danger involved in operating mechanized equipment in close proximity to the high tension power lines. The parties offered conflicting evidence on this point.

■ However, the amount of the Commissioners' award leaves no doubt but that they thought the landowner was denied effective use of the land within the easement area. The District Court also found interference with farming operations due to the presence of the power lines.[4] We agree with these findings.

The easement defined in footnote 1 of this opinion is very broad. In our opinion it grants rights to TVA which will substantially and perpetually interfere with the landowner's use. In addition, it would depreciate the value of the farm should the owner desire to sell the farm.

Photographic evidence revealed over-ripe crops in the easement area which had not been harvested. Attempts in the past had been made at hand harvesting, but Winter Garden officials testified that this method of harvesting was not economical.

■ We are of the opinion that the Commissioners' award for the value of the easement taken is correct. That award was $19,744.34.

The only remaining question is that of damages to the residue. The Commissioners found this damage to be $76,227.50 by use of the "before and after" method of evaluation. The District Court found only $9,000-damage to the residue, but did not state how it arrived at that figure. Both the Commissioners

---

4. In its Memorandum Opinion the District Court stated:

We likewise resolve doubt in favor of defendant with respect to a limitation upon its farming the clear portion of the easement area taken and an area immediately adjacent thereto because of its special method of spraying and possible dangers inherent in this nearby TVA high power line.

The easement also interferes with the growing of trees in the area of the easement.

and the District Court agreed that there was damage to the residue, but disagreed only as to the amount thereof. The awards for damage to the residue ·were based on the belief, on the part of both the Commissioners and the Court, that farming operations were adversely affected even outside the area of the easement proper. The Court specifically found that irrigation and spraying operations in the area adjacent to the easement were interfered with because of dangers present from nearby high power transmission lines.

The landowner sought $126,055-damages for relocation of facilities like irrigation chálnnels, and reshaping the land so as to make it more suitable for mechanical harvesting, given the existing high power transmission lines. The District Court denied any award for such new construction. We think such denial was proper, for the landowner has not made these changes although several years have passed.

The landowner contended that it planned to put the balance of the uncleared land into production, and that these plans were frustrated by the presence of high power transmission⁴ lines. It seeks damages for this alleged interference. The District Court rejected any award for such frustration of future hopes, finding that there was no concrete evidence of these plans. Moreover, the law is clear that frustration of future business plans is not compensable. United States v. Grand River Dam Authority, 363 U.S. 229, 80 S.Ct. 1134, 4 L.Ed.2d 1186 (1960).

The Commissioners did not state whether their award of $76,227.50 for damages to the residue encompassed an award for redesign and frustration of future plans, or whether it was limited solely to damages incurred through increased difficulties of farming the residue.

We agree with both the District Court and the Commissioners that damage was done to the residue. However, we are of the opinion that the District

Court's award of $9,000 was too low. It did not adequately take into account the interference of the high tension power lines with the operation of the farm, and the depreciation in value of the farm. In our opinion an award of $45,000 for damages to the residue is warranted.

We therefore fix the value of the property condemned in the amount of $64,744.34, for which amount judgment is entered against TVA, together with interest from the date of taking.